UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EMMA HOWLAND-BOLTON et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF DETROIT et al.,<br><br>  Defendants. | Case No. 21-10751<br>Honorable Laurie J. Michelson |

### OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR RECONSIDERATION [69] AND DENYING NON-PARTIES' MOTION FOR PROTECTIVE ORDER [72]

Emma Howland-Bolton and four other individuals served as Legal Observers for the National Lawyers Guild at protests in Detroit held in response to the murder of George Floyd during the summer of 2020. Detroit Will Breathe participated in and led some of these protests. These Legal Observers bring this lawsuit against the City of Detroit and other Defendants, claiming that the Detroit Police used excessive force against them during the protests, retaliated against them for exercising their First Amendment rights, and wrongfully arrested at least one of them.

In March 2022, more than six months into discovery, Defendants served supplemental requests for production on Plaintiffs pursuant to Federal Rule of Civil Procedure 34. Plaintiffs did not respond to these requests for more than thirty days. Pursuant to its case management protocols, the Court conferred with the parties on May 6, 2022, and helped the parties reach an agreement where Defendants would narrow their requests and Plaintiffs would respond.

One issue, however, lingered after that conference. Plaintiffs objected to Defendants' request that they produce all communications between Plaintiffs and Amanda Ghannam, Julie Hurwitz, and Jack Schulz, who are attorneys for Detroit Will Breathe in a companion case. So Defendants moved to compel these communications (ECF No. 53), and the Court granted in part their motion to compel (ECF No. 62).

Now, with new counsel and raising new arguments, Plaintiffs move this Court to reconsider. (ECF No. 69.) Among other things, Plaintiffs ask that this Court tailor its prior order so that production is limited to direct communications between Plaintiffs and Ghannam, Hurwitz, and Schulz. It appears that defense counsel specifically requested only direct communications at the hearing. (ECF No. 64, PageID.676 ("[A]t this point, what we are seeking are direct communications between the individual plaintiffs here and the individuals identified in the supplemental discovery request, whether that be via email, text message, or otherwise, but it's strictly direct communications[.]").) Given Defendants' statement at the hearing, the Court GRANTS the motion to the extent it requests the production be limited to direct communications.

Further, pursuant to Rule 26(b)(1), the Court limits the production to communications that refer, relate, or pertain to the protests that occurred during the summer of 2020. This does not include communications about any individual's legal defense against charges that arose from the summer 2020 protests.

However, as none of Plaintiffs' other arguments meet this District's standard for reconsideration, the Court DENIES the rest of the motion.

I.

As an initial matter, the "palpable defect" language Plaintiffs cite in favor of their motion is outdated. Eastern District of Michigan Local Rule 7.1(h) governs motions for reconsideration of non-final orders, and it was recently revised. The rule makes clear that such motions are disfavored. E.D. Mich. LR 7.1(h)(2). They may only be brought in three circumstances: one, if "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision"; two, if there was an intervening change in controlling law; or three, if new facts were discovered that could not have been discovered prior to the decision. E.D. Mich. LR 7.1(h)(2)(A)–(C).

The only prong that could be applicable to Plaintiffs' motion is the first one—that the Court made a mistake based on the record and law before the Court at the time of its prior decision. Yet, none of Plaintiffs' arguments for reconsideration point to a mistake made by this Court.

Take Plaintiffs' renewed argument asserting work-product privilege. The Court overruled this discovery objection for three reasons. First, that Plaintiffs had not produced a privilege log, which limited the Court's assessment of the privilege. (ECF No. 64, PageID.698.) Courts in this District and others "have held that a party's failure to assert a privilege on a privilege log constitutes a waiver of the privilege[.]" (*Id.*); *see also John B. v. Goetz*, 879 F. Supp. 2d 787, 890 (M.D. Tenn. 2010); *West v.*

3

*Lake State Railway Co.*, 321 F.R.D. 566, 569–70 (E.D. Mich. 2017) (finding privilege had been waived for noncompliance with Rule 26(b)(5)). Second, Plaintiffs had not provided affidavits stating that all communications between Plaintiffs and Ghannam, Hurwitz, and Schulz were made in anticipation of litigation. And third, that Plaintiffs here had not represented that the plaintiffs in *Detroit Will Breathe v. City of Detroit*, No. 20-12363, will not use materials prepared by Plaintiffs in that litigation. (ECF No. 64, PageID.699–700.) Such assurances were necessary because the Court found that Plaintiffs may not use work product to shield materials in this case while Detroit Will Breathe used the same or similar materials as a sword in another. (*Id.*)

Plaintiffs do not address any mistake in the Court's reasoning other than its ultimate conclusion that the work-product privilege did not shield the requested discovery. Plaintiffs merely reiterate that Plaintiffs and Hurwitz, Ghannam, and Schulz are all members of the Detroit and Michigan chapters of the National Lawyers Guild, and some of these individuals also serve on the board of these chapters. (ECF No. 69, PageID.727.) Plaintiffs again summarily assert that they "were included in communications of this organizational work product pertaining to coordinating the legal representation and witness statements on behalf of . . . the protestors[.]" (*Id.* at PageID.728.) Again, this argument does not point to any mistake in this Court's order. It does not address Plaintiffs' failure to provide a privilege log, affidavits swearing the relevant facts, or assurances that these materials would not be used in another case. The Court's order did not discuss or analyze the merits of Plaintiffs'

4

assertion of work-product privilege. It instead explained why such an assertion was not properly made and why it could not properly evaluate the assertion of privilege.

Plaintiffs also attempt to cure a prior defect noted by the Court by now submitting affidavits from Plaintiffs about their communications with Ghannam, Hurwitz, and Schulz. But that is not how motions for reconsideration work. It is not permissible for a party to fail to collect important factual information before a Court decides a motion, and then when a Court rules against the party, present new facts to address the Court's concerns. Discovery issues should not be a moving target. And given that Plaintiffs had notice of Defendants' requests since March, they had more than enough time to thoroughly prepare and present their arguments to the Court on July 18. It cannot be considered the Court's "mistake" that they failed to do so.

Perhaps as an explanation for not providing certain materials, Plaintiffs state that they recently retained new counsel to represent them. (ECF No. 69, PageID.732–733 ("It would only be fair to allow Plaintiffs' new counsel an opportunity to be heard in court before enforcing such a strict Order, as well as to allow Plaintiffs an opportunity to submit discovery responses and objections to Defendants should be deemed timely.").) But nothing in Rule 7.1(h) allows for reconsideration because a party hires new counsel who makes different or more thoroughly supported arguments. Reconsideration is only permitted if the Court made a mistake, there is an intervening change in law, or new facts that could not have been discovered earlier are found. Plaintiffs have not pointed to any mistake in this Court's prior order based on the record and law before it at the time. Instead, they merely make clear that they

5

disagree. So the Court will not reconsider its order compelling production of certain communications.

## II.

Plaintiffs argue, as they did in response to the motion to compel, that the requested communications are overbroad and disproportionate to the needs of the case. Plaintiffs state that they "are thus required to sift through and produce thousands of emails, as well as a still undetermined quantity of text messages, social media direct messages and postings." (ECF No. 69, PageID.723.) Plaintiffs later state that their current counsel has not "had an opportunity to review the thousands of communications which are currently covered by this Order and was not aware of the depth of these communications prior to the motion and could not have been aware through further diligence as he is not actively involved in the internal matters of the NLG[.]" (ECF No. 69, PageID.731.)

This excuse rings hollow. Indeed, the Court is concerned that more than four months after this discovery was served on Plaintiffs, they still are not aware of the exact universe of documents that are pertinent to this request. The Court understands that current counsel was recently retained. But that does not excuse the duty Plaintiffs had on their own and through prior counsel to determine what documents pertain to Defendants' request and to review these documents in order to then assert objections and make a meaningful argument that the request is overbroad. As the Court noted at the hearing, "Plaintiffs' counsel today does not know the total volume of this material. Without this information, the Court cannot find

6

that the request is unduly burdensome." (ECF No. 64, PageID.697.) The same holds true now.

The Court also noted at the hearing that Plaintiffs have yet to produce a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5) in which Plaintiffs "describe the nature of the documents not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." A blanket assertion of work-product privilege, thus, is not sufficient, especially where the requested communications do not clearly implicate the privilege. The Court does not understand how Plaintiffs can satisfy their obligations under Rule 26(b)(5) without conducting a review of the documents and understanding the universe of documents pertaining to the request.

Further, Plaintiffs state that the Court committed "clear error" by not requiring this discovery be reviewed in camera. Plaintiffs state that both "Defendants and Plaintiffs agreed that this Court should conduct an *in camera* review[.]" (ECF No. 69, PageID.717.) But when the Court asked Plaintiffs' prior counsel if the responsive communications were at the hearing such that the Court could review them in camera, Plaintiffs' counsel responded that they did not have them. (ECF No. 64, PageID.684.) So whether or not the parties agreed to an in camera review, Plaintiffs were not prepared for such a review when the Court offered. And Plaintiffs did not indicate to the Court that they would be prepared to submit the documents in the near future. Further, the Court will not conduct a first-level review of the

7

documents when Plaintiffs themselves have yet to review the full universe of responsive documents.

### III.

Plaintiffs also make several arguments about how this request is not relevant to any claim or defense in this case because Defendants have not asserted a conspiracy counterclaim or defense.

The Court agrees that Defendants have not raised a formal conspiracy defense or counterclaim. The communications requested here, however, are not relevant only to the narrow issue of whether there was a conspiracy between protestors and Legal Observers. Defendants pled a defense of "Plaintiffs' consent, or other proper legal standard to believe that Plaintiffs were subject to lawful seizure," and that "Defendants' actions were justified by Plaintiffs' actions, or the actions of others over whom the Defendants had no control," and that Plaintiffs unlawfully caused or contributed to their own injuries. (ECF No. 18, PageID.126, 127.) This defense relates to the general legal principle that excessive force is evaluated according to the totality of the circumstances. Whether Plaintiffs communicated with members of Detroit Will Breathe counsel beforehand about how to act at the protests is relevant. Such communications would make it more likely that their actions at the protest were intentional, which informs whether they were lawfully arrested. Defendants do not have to show that Plaintiffs acted in a formal, legal conspiracy with other protestors. The communications between Plaintiffs and Detroit Will Breathe lawyers are relevant to Defendants' defense that Plaintiffs somehow contributed to the unrest at

8

the protests or intentionally provoked officers. And Defendants did not raise this defense "for the very first time" in the briefing for their motion to compel. (*See* ECF No. 69, PageID.717.) Instead, it was pled in their answer that they intend to show that the actions they took were reasonable and lawful because of how Plaintiffs responded to them, and that response may have been informed by communications with Detroit Will Breathe and its counsel.

So the Court will not reconsider its order compelling production of these communications because they are irrelevant to a claim or defense.

## IV.

A few additional things concern the Court. First, on July 27, without mentioning a potential motion for reconsideration, the parties asked the Court to enter a stipulated order extending the deadline *to produce* the court-ordered documents. The Court agreed to do so because it believed those documents were being produced. Then, four days after it entered this order, Plaintiffs asked this Court to reconsider the motion all together, making it so they would not have to produce anything in response to Defendants' request. The Court questions whether it received full disclosure.

Second, almost six months after Defendants served the discovery requests at issue and more than a month after the Court ruled on Defendants' motion to compel, non-parties Detroit and Michigan Chapters of the National Lawyers Guild seek a protective order with respect to that discovery. (ECF No. 72.) That is also not how the

Federal Rules of Civil Procedure or this District's local rules work. That untimely motion is DENIED.

The Court, however, addresses one concern raised by the non-parties' motion for protective order. The motion argues that compelling this discovery would infringe on the non-parties' (and their members') freedom of association. (*See, e.g.*, ECF No. 72, PageID.824 ("Lawyers and others who have reason to fear that their private communications about legal, political and social justice issues will end up in the hands of the very officials whose policies they are challenging are highly likely to be chilled in the exercise of their associational and speech rights.").)

But Defendants are not asking, and the Court is not ordering, that members of NLG who are not Plaintiffs in this litigation be revealed or that their communications be produced. The only communications to be produced are direct communications between Plaintiffs and Ghannam, Hurwitz, and Schulz, all of whom have readily revealed their association with NLG. The case at hand does not involve the same associational interests as other cases where member lists or union authorization cards are the subject of the motion. Not only have these individuals already confirmed their membership and participation within NLG, they have also made clear their views on the social justice issues that would be discussed in relevant communications about the summer 2020 protests. By bringing this and other litigation, Plaintiffs have already publicly established their views on how the Detroit Police handled the protests. So this order should not affect others participation within

10

or support of the non-parties unless those individuals also put their views at issue by bringing litigation.

V.

For the foregoing reason, the Court will GRANT IN PART Plaintiffs' motion for reconsideration. (ECF No. 69). Plaintiffs are required to produce only direct communications between Plaintiffs and Amanda Ghannam, Julie Hurwitz, and Jack Schulz that refer, relate, or pertain to the protests that occurred during the summer of 2020 as requested by Defendants' supplemental requests for production. (ECF No. 53-2.) This ruling applies as well to the non-parties' motion for protective order. (ECF No. 72.)

SO ORDERED.

Dated: August 30, 2022  
      Detroit, Michigan

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
United States District Judge